I'm going to move to the second case this morning, Federal National Mortgage v. City of Chicago. Good morning, Your Honors. May it please the Court. This morning I will explain that the buyers of Fannie Mae and Freddie Mac's real property are not exempt from the City's transfer tax. Neither the language in the three federal statutes at issue nor the Supreme Court precedent supports such an exemption. So the City has not been preempted here. Each federal statute at issue exempts three, well each statute exempts a specific entity from local taxation. Each of the statutory charters exempts a corporation, which is defined in the respective statutes as Fannie Mae and Freddie Mac. And the Housing Economic Recovery Act exempts the agency, which is of course the FHFA. The statutes exempt those three entities, including various types of assets held by those entities. The City of Chicago does not require any of those entities to pay the transfer tax or impose a tax on their assets. Are all of those entities some kind of government? They're government instrumentalities. But they're asserting a statutory exemption. I'm not sure if that's... Well, I'm just curious. These seem to be government entities that have this exclusion. Well, they've gone through various iterations. I think you're saying that a buyer does not come under that cover is what you're trying to say. I'm sorry? You're trying to say a buyer of that property does not come under that umbrella. Absolutely. And that's what I'm trying to distinguish between a buyer and those entities. Right. A buyer absolutely does not come under that umbrella. Okay. What about those entities? They look like some sort of a government entity that gets this exclusion. They definitely have a distinct relationship with the government. It's changed over time. They've been independent entities. Now they're under conservatorship of the FHFA. They do have expressed statutory exemptions, and we don't dispute, as court decided in DeKalb, that that exemption does apply to them when a transfer tax is imposed on them. We submit it does not apply when it is imposed on the buyers of the real property because the city's transfer tax is imposed on the transferee, and it's owed at the time that the transferee receives or records the deed. So the exemptions in the federal statutes for Fannie Mae, Freddie Mac, and the FHFA do not apply. So the transferee buys the property for a certain amount, and then it's assessed to that tax, I guess, transfer tax. That's correct. So the situation here is not meaningfully different than what is involved in the Supreme Court cases involving the immunity of the federal government from state and local taxation. I understand that this is a statutory exemption, but there, by analogy, where the federal government enjoys the immunity from state and local taxation, the Supreme Court has held there is no basis to include other entities, even when they are closely involved with governmental functions and property. We cite a number of those cases in our brief, Esso Standard Oil, Blaze Construction. We submit that here, too, no one else should get the benefit of an exemption that is clearly assigned to three specific entities. Now, a statute could be drafted so that it is not entity-specific, but here it was not. And to illustrate how a statute can be drafted so it is not limited to one specific entity, I'd like to highlight a passage from Bismarck Lumber, which is a case that both parties cited, that compares two different types of exemptions that were at issue in that statute, which was the Federal Farm Loan Act, in a way that highlights the limitation of an entity-specific exemption. There was an exemption there similar to the one here for the specific entity at issue there, which was the Federal Land Bank, but there was also a second exemption that covers two specific types of assets, mortgages and loan bonds. And the court explained that the second type of exemption was a proper addition because the entity-specific exemption, because, quote, the bonds may be held by private persons and, of course,  And the court similarly said that the general entity-specific exemption would, quote, protect mortgages executed to the land banks and held by them, but it would not survive a transfer, end quote. So this passage makes clear that the general entity-specific exemptions do not apply to anyone else, especially when the exempt entity's property interest has been extinguished. Then you need the second type of exemption that is not limited to the entity, and that latter type of exemption just isn't present here in any of the three statutes. The plaintiffs rely heavily on the Lawrence Federal Savings and Loan case, and that is the only case involving an entity-specific exemption in which the local tax was being demanded of anyone besides the particular entity identified as exempt in the statute. Instead of the Federal Home Loan Bank, it was the Savings and Loan Institution that owed the tax, but even though the savings and loan was the taxpayer there, the exemption was applied to the bank's advances. Specifically, the state tax was on promissory notes that had been issued to the bank. So it was a tax on the bank's property, even if under the statute someone else would pay it. There's nothing like that here. The transfer tax is not a tax on Fannie Mae or Freddie Mac property. It's on a transfer, and it is not even owed until the deed conveying title to another party, the buyer, is delivered or reported. Is that transfer tax in a dedicated tax into a dedicated fund or is it a general fund? I believe it's general funding. Okay, and it's $3.50 for every $500 value on the purchase price. I believe it's $3.75 for every $500. $3.75. And then there's another what we call the CTA portion that is collected at, I believe it's at 1.25%. $1.50 or so. It boils down to about 1% between the two. Well, of course, you buy a Chicago $300,000 house, that's a lot of money, and I know Chicago needs it. Chicago needs it. I mean, that's the point. I'll call it a punitive tax, but it appears that maybe they can do that. Well, it's a tax that's owed by buyers of property who are going to enjoy the benefits of that property by owning property within the city of Chicago. The taxes are used to fund important municipal services. But the court attached it to, blended it in and said they get the, the buyer gets that exemption too or that protection, right? Yes, and we submit that district court erred in that because there is no support in the plain language of the three statutes at issue that exempt Fannie Mae and Freddie Mac but not their buyers. And there's a reason that plain language is so important, as you mentioned. There are policy justifications on both sides. And so it's up to Congress to balance those. State and local taxation is important. So while Congress wants to give, you know, Fannie Mae a boost and some leeway with some tax cuts, it can do that while preserving a measure of local taxation on buyers. And that balance makes sense since it is the buyer of Chicago property that will benefit from the municipal services. Fannie Mae's exemption includes the language mortgages, which the plaintiffs have emphasized, and we submit the city's transfer tax is not a tax on Fannie Mae's mortgage. The term mortgage standing alone does not mean the entire mortgage investment process, as plaintiffs argue. They compare that term to the broad meaning of the terms loan and advances, which were in the statutes at issue in Pittman and Lawrence. But we submit that a loan or advances can be made up of component parts, mortgages and promissory notes, but a mortgage does not contain as a component part the transfer of property after foreclosure when there isn't a mortgage anymore. And Freddie Mac's statute is a little bit different in that it is a little bit different in kind because it also includes activity in the including clause, rather than just assets or property. But regardless, the transfer tax is not imposed on a Freddie Mac's activity. It takes two to transfer, so there's activity by the seller and the buyer, and since this tax is aimed at the buyer's activity, and it's the buyer who owes the tax, and at the moment that the property becomes the buyer's, we submit that it is the buyer's activity, not the seller's that is the subject here. So in conclusion, the statutory entity-specific language is not worded in a way that applies an exemption to all parties involved in a particular transaction. There is a way to achieve that with plain language directed at the transaction itself, either transfers specifically or transactions more generally, but Congress just didn't do that here. Congress wrote these three statutes to exempt specific taxpayers, Fannie Mae, Freddie Mac, and the FHFA, and the District Court erred in implying an exemption for the buyers of their property as well. The buyers of Fannie Mae and Freddie Mac property are not included in the exemption. So we do ask that the judgment of the District Court be reversed, and I will save the remainder of my time. I did have one other question, just on the real estate, et cetera. Usually these are Fannie Mae or Freddie Mac foreclosures, is that right? And then they turn around and sell that property. Right. Oftentimes in those agreements, when there's deed in lieu of foreclosure, especially, they waive the deficiency. I'm curious mostly, I know this doesn't go into it, but it seems to me that, because that's especially when things are not going well, there's a lot of those kinds of foreclosures, and I just wondered if that's part of what the buyer, first of all the debtor who loses the property, there's oftentimes a deficiency, and they waive that usually. At least that's the way I recall it. It's been a long time since I was in this area of the law, but that seems to be how they get that and kind of cleans it up, so that the buyer then buys the property for whatever the market value is at that point, and then what the buyer pays is what is taxed. That's correct. That's tough, but at the same time you're saying that's the law. Well, it's a tax that's imposed on any buyer property in the city of Chicago. Okay. It's an important source of tax revenue in the city of Chicago. This doesn't impact what happens on the foreclosure end of it, but the sale between Fannie Mae and its buyers, it's pretty straightforward. The tax is owed on the amount. Does it go into the general fund or just the CTA? Well, a portion of it does go to the CTA. Only a portion of it. Right, right. So part of it is dedicated then. Yes, I'm sorry, and I corrected that earlier statement. So, yes, that's true. There's two different portions, and I believe it's 1.75 percent or 1.75 on every $500 goes into the CTA portion to fund the CTA. If there are no other questions, I'll save the remainder of my time for rebuttal. All right. Thank you. Mr. Johnson. Thank you, Your Honors. May it please the Court. The case presents a simple question, whether municipalities can tax the transactions of entities Congress expressly exempted from all taxation through the simple expedient seeking to collect the tax from the exempt entity's counterparty rather than the exempt entity itself. The Supreme Court held in the Lawrence case a substantially identical statutory exemption covers the entire transaction, regardless of which party, a taxing authority, pursues the payment. That precedent controls here, and the Court should therefore affirm. In addition to answering the Court's questions, I really want to make just two points. First, I want to explain that this case is factually analogous to Lawrence, and second, I want to explain why Lawrence unquestionably remains good law. This case is on all fours with Lawrence, I might say all fives, because there are five important dimensions in which this case and the Lawrence case are virtually identical. First, the nature of the entity involved. Second, the wording of the statutory exemption at issue. Third, the type of tax sought to be imposed on the transaction. Fourth, the relationship between the transaction sought to be taxed and the federally authorized mission of the exempt entity. And fifth, the argument offered by the taxing authority. On all five of those dimensions, this case and Lawrence are virtually identical. Let's start with the nature of the exempt entity. We've got the Federal Home Loan Bank of Atlanta in the Lawrence case. That's a federally chartered financial institution whose statutory mission is to fund home mortgages. That's its purpose. It does that through the channel of making advances, that is loans to federal savings and loans. In this case, the entities at issue are Fannie Mae and Freddie Mac, federally chartered financial institutions whose congressionally authorized function is to direct capital into home mortgages. It does that through a slightly different channel, the purchase of mortgages on the secondary mortgage market from all sorts of originators, banks, savings and loans, mortgage companies. Each of their missions is to supply capital to the market, albeit through these different channels. So similar entities, federally chartered financial institutions, similar missions, direct funding to the home mortgage market. Second dimension of close similarity between this case and Lawrence, the wording of the tax exemptions in the charters. Let's look at the tax exemption from the Federal Home Loan Bank, the statute at issue in Lawrence. That read, the bank, including its franchise, capital, reserves and surplus, its advances and its income shall be exempt from all taxation. Fannie Mae's charter includes a very similar, virtually identical exemption. The corporation, including its franchise, capital, reserves, surplus, mortgages and other security holdings and income shall be exempt from all taxation. Freddie Mac, virtually identical language, structure says, entity including a number of items illustrating the breadth. Let's read it. The corporation, including its franchise, activities, capital, reserves, surplus and income shall be exempt from all taxation. So activities include sale to a private buyer? Oh, of course. And as my friend Ms. Luce said, it takes two. Those were her words. There's no activity. There's no transaction. Nothing happens without a buyer and a seller. So if we look at the activities prong of the Freddie Mac statute, which as we explained in the brief and I'm happy to explain to the court, is substantively identical to the mortgages and other securities item in the Fannie Mae statute because these entities are, by their charter, limited to investing in mortgages. They're not property managers. They're not general industrial corporations. They were chartered to do one thing, facilitate the mortgage market. That's all they do, just like the Federal Home Loan Bank was chartered to do one thing, provide advances to fund home mortgages. And when the Supreme Court looked at the advances term in the Lawrence statute, it said, hey, because Congress meant to facilitate the statutory mission of the Home Loan Bank, we're going to read that word advances not in the narrow way that Ms. Luce, my friend, would like the court to read it, but instead in a way that's consistent with Congress's purpose to cover the entire process of lending, the whole transaction. Those are the Supreme Court's words in the Lawrence case, echoing back to Pittman, where it looked at the same issue. Granted, it was looking at it in a case where it was the exempt entity, where the taxing authority sought to collect. But the court recognized to facilitate the purpose, it doesn't matter which party is pursued for collection. The tax hurts the mission, and so it's within the scope of this extremely broad language that Congress enacted in each statute to protect the entity and the activities at the core of its mission. And the purpose is obvious. It's to reduce the cost of the exempt entity to facilitate its mission, and to reduce the geographic variations it has to face. Judge Mannion, you're absolutely correct that in most of these foreclosures, the property is underwater. So Fannie Mae or Freddie Mac are going to lose money. They're going to bear a loss here because the value of the property will not suffice to satisfy the amount left due and owing on the loan. So they're going to have to take a loss. And Congress wanted to limit that loss to the extent it possibly could by exempting Fannie Mae and Freddie Mac from these kinds of transaction-specific taxes. It did that, and it would be inconsistent with Congress's purpose if Chicago and Indianapolis and Bloomington and Moline and every other city could simply collect the tax anyway, see it priced into the buyer's bids, take that money out of Fannie Mae and Freddie Mac's pockets where Congress wants the money to be through the simple expedient of collecting the tax from the buyer. Okay, so what you're basically saying is that the purchase price, you blend it in or whatever you want to call it, where it adds on, so anybody that's buying that property knows they're going to have to pay whatever that percentage is in addition to whatever the sale price is. Yes. So they know that's basically what it costs as opposed to varying things. You have other liens, you have realtors and other people that take a piece of the action, but in that particular case, I guess you're arguing that it really increases the cost of the property, but the beneficiary is not whatever you want to call it, Fannie Mae or Freddie Mac. Well, what the Supreme Court said in Lawrence is that putting taxes on these transactions, whichever party pays, drains money out of the mission that Congress authorized the exempt entity to perform, and I think that was- It goes to the city instead of the entity, whatever you call it. Well, here, if the tax were allowed- I'm talking about just the value of the property. Right, the value of the property is what it is. A buyer is, of course, going to take into account all costs it's going to have to pay when deciding what to bid for the property. So if the tax is allowed in a market, buyers will know that, and they will price their bids accordingly. And some of that money that Congress wanted Fannie Mae and Freddie Mac to have to redeploy in mortgages throughout the country, fulfilling their statutory mission of making home mortgage financing more free, some of the resources to do that would be gone. They'd be in Chicago's pocket instead of Fannie Mae's and Freddie Mac's, and that's just not what Congress wanted. It's a simple way of putting it. And the Supreme Court acknowledged that in the Lawrence case when it said, this kind of exemption covers the whole transaction, the entire process of lending. We're not going to slice and dice and say, oh, it's on the note, not on the advance. That's the argument that the South Carolina Taxing Authority made, same argument that my friends at the city make. The South Carolina Supreme Court accepted it. The South Carolina said, you know what, we're not going to follow that dicta from Pittman where the Supreme Court of the United States said it doesn't matter which party pays the tax. We're going to read the exemption to cover only the entity, and because South Carolina is trying to collect from the non-exempt borrower the savings and loan in that case, rather than from the exempt lender, the Federal Home Loan Bank, the South Carolina Supreme Court said, you know what, this tax is okay. It's not being collected from the exempt entity. The Supreme Court of the United States said, no, no, no. No, no, no. You cannot cabin that word advances in that narrow, crabbed way so that South Carolina can use this expedient of collecting from the counterparty rather than the exempt entity. That's not what Congress meant. It meant to protect the whole process, the entire transaction. That's all that need be done here. The entire process of Fannie Mae's investment in mortgages, that key word in its statute, mortgages, has to run from acquisition of the loan coupled with the mortgage through disposition. That's the entire process, the whole transaction. It's an inherent and indispensable element of mortgage investing that at some point some of those mortgages will go into default and foreclosure, and the mortgage investor will have to dispose of the real estate. The entire process covers origination through sale of the real estate. That's when that mortgage is finally liquidated and taken off the books. I don't know enough about the actual transactions, but when a realtor represents a buyer, he'll get a commission, and I guess that comes from the buyer and not from the seller. It can be negotiated, but I think that's typically how it works, Your Honor. I just wonder if there's any commission from the seller. I don't know. I only ask because that would cut into Fannie Mae. What I do know is that Congress can preempt state and local law. It can also authorize Fannie Mae and Freddie Mac to conduct business in certain ways. It's done that. It's limited them to investing in the mortgage market. It hasn't legislated on whether Fannie can or should use certain kinds of contractors or set certain terms when engaging in its business. That's Congress's prerogative, and Congress could say Fannie Mae do not pay more than X percent in real estate commissions. It just hasn't done that. What it has done is said Fannie Mae and Freddie Mac do not pay tax on those transactions, and because of the Lawrence decision, we know that that exemption covers the entire transaction, the entire process of lending, whether it's collected from Fannie and Freddie or from a counterparty to its transactions. So it's confined to tax? It is. The provisions that we're looking at here are confined to taxes. They are explicit tax exemption provisions, and that's what distinguishes this case from the cases that my friend Ms. Luce mentioned that involve implied constitutional tax immunity. We need to be very cautious here. There are two parallel lines of authority that deal with two different sorts of exemption or immunity from taxation. There's constitutional immunity that's inherent in the federal government's own entities and activities, so the Department of Agriculture, the court, the army. Those are part of the U.S. government. They are exempt from tax. There is a line of cases starting with McCulloch v. Maryland that says those entities are not subject to state and local taxation. For decades, that implied constitutional immunity expanded, but in 1937, in a very important case cited in many of the cases that both parties cite, it's not directly cited in either party's brief, but it's called James v. Dravo. That's been described as a turning point, a major change in direction. The court said, you know, we're going to restrict this. Congress can't fix it if we extend implied constitutional immunity to the government's contractors. So we're going to pare that back and say only applies to the government itself. If Congress wants broader immunity, it should exempt entities it creates, and we can figure out what it means when Congress acts. But when Congress doesn't act, we're not going to construe implied constitutional immunity broadly. After that, after the Supreme Court had said implied constitutional immunity does not extend beyond the government itself, we see the court following up on Pittman and Crossland, which were these initial cases that had dicta suggesting that it doesn't matter who pays the tax where there's a statutory immunity. The Supreme Court made two decisions. The first was in 1952, another case that neither party cites directly, but it permeates many of the cases cited in both briefs. It's called Carson v. Roan-Anderson. Involved the Atomic Energy Commission. Congress enacted a statute saying the commission and its activities shall be exempt from all taxation. Supreme Court said that covers counterparties and not just the counterparties themselves, but the counterparties' transactions with third parties. So when Congress acted, the Supreme Court applied a very broad construction even after this turning point, this paring back of constitutional immunity. Then in the Lawrence case, again, long after the Dravo case, after Esso, after Detroit, after the Supreme Court had cut back constitutional immunity, the Supreme Court said, Lawrence, you've got a statutory exemption at issue here. You're a party to a transaction with an exempt entity. You can't be liable for the tax. I see my time is up. If I may, I'd like to address one more case that Ms. Luce did cite in her brief. That's the World Bank case because I think it may come up on rebuttal. That is a statutory exemption case. However, it's not a counterparty case. That case involved the World Bank engaging a private company to run its cafeteria. The question wasn't whether transactions between the World Bank and the cafeteria operator were exempt from taxation. The question was whether transactions between the cafeteria operator and members of the public were exempt from taxation. It's not our case. It's one step removed from our case. It does not govern here. If the court has questions, I'm happy to answer them. Otherwise, I appreciate the court's attention. Thank you, counsel. You have three minutes, Ms. Luce. Just a few points in response. First of all, I've heard a lot about how Lawrence exempted the transactions between the exempt entity and their counterparties, and that's actually not the case. The statute exempt advances, and the court looked to the broad meaning of the term advances. And the court specifically spent some time on that and did not just rely on the laudable purposes for funding the home loan banks there, but looked at advances which include, according to the statute, included promissory notes, and the tax was on promissory notes. That is part and parcel of an advance. In other words, the court found lodging for extending the exemption there or for applying the exemption there in the plain language of the statute. You can't do that here. There's no word of transactions or there's no transfers that are exempt. There's no other entity that's exempt. The only way you can reach an exemption of the buyers here is to imply an exemption, and the Supreme Court has been very clear that you cannot imply exemptions from taxation of state and local taxes. So plaintiffs do not have a corner on the important policy objectives. Congress looks at its objectives and balances those. There are important policies on both sides of the equation. There are policies to preserve local government's ability to impose taxes on activities that occur within its borders. The cities need those resources for important governmental purposes, schools, streets, police and fire departments, and that's why Congress insists that you can't just imply that Congress has intended to come in and preempt state and local authority to do that. And you need, even in Lawrence, there was the plain language. It wasn't just about reading advances properly to include everything that the exempt entity is involved in. It was about reading the term advances because advances includes things like promissory notes or mortgages that are going to come along with a bank's loan. That's not true of mortgages. Mortgage is not tantamount to the entire mortgage lending investment process. A mortgage is a mortgage, and this is not a tax on the mortgage. Mortgage doesn't have anything to do with the sale of property? Right. Well, I mean, the buyer might have a mortgage, but the mortgage, but that's not going to be the Fannie Mae and Freddie Mac's mortgage. It's not a tax on their mortgage, and the tax is not on any mortgage. It's on the transfer of property. That is not included anywhere in the plain language. It is an entity-specific exemption. And, again, with respect to the federal immunity cases, there's just a logical, common-sense proposition in those cases. If it's not the federal government, there's no exemption, and we submit that same logical premise should apply here. I do see that my time has run. We do ask that the judgment of the district court be reversed. Thank you. Thanks to both counsel. The case is taken under advisement.